# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 1, 2016

## IN RE YARIEL S., ET AL.[1]

### Appeal from the Juvenile Court for Knox County
#### No. 78279    Timothy E. Irwin, Judge

___

### No. E2016-00937-COA-R3-PT-FILED-JANUARY 6, 2017

___

This appeal involves the termination of a mother's parental rights to her four minor children. Following a bench trial, the trial court found that clear and convincing evidence existed to support the termination of her rights to all four children on the statutory grounds of abandonment for failure to provide a suitable home, the persistence of conditions which led to removal, and substantial noncompliance with the requirements of the permanency plan. The court also found that clear and convincing evidence existed to support the termination of her rights to the youngest child on the statutory ground of severe child abuse. The court further found that termination was in the best interest of the children. The mother appeals. We reverse the trial court on its finding of abandonment for failure to provide a suitable home. On all other findings, we affirm the trial court's rulings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, P.J., M.S., and KENNY ARMSTRONG, J., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Kayla N. S.

Herbert H. Slatery, III, Attorney General and Reporter, and W. Derek Green, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

___

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

## OPINION

## I. BACKGROUND

Yariel S., Yaron S., Yariyana L., and YariAsia L. were born out of wedlock to Kayla N. S. ("Mother") and Yaron D. L. ("Father") in July 2011, January 2010, February 2013, and December 2014, respectively. Father was not listed on Yariel or Yaron's birth certificate; however, he held himself out in the community as the father. Mother also confirmed his identity as the father. The Tennessee Department of Children's Services ("DCS") first met with Mother after she tested positive for benzodiazepines and marijuana while pregnant with YariAsia in October 2014. Despite Mother's drug use while pregnant, both YariAsia and Mother were negative for drugs on the day of YariAsia's birth. At that time, Mother and Father (collectively "the Parents") agreed to cooperate with services and receive treatment for substance abuse.

Thereafter, Mother self-reported drug use in January 2015 and tested positive for drug use in February, March, and June 2015. While at a child and family team meeting in May 2015, Mother agreed to attend an appointment at a drug treatment center the next day. Mother failed to attend the scheduled appointment. DCS petitioned for temporary legal custody of the Children on June 4, 2015. The Children were removed and placed into foster care, where they have remained since that time. They were later adjudicated as dependent and neglected by agreed order due to Mother's substance abuse issues and mental health issues, Father's substance abuse issues, and the Parents' failure to provide appropriate care and supervision of the Children.

An initial permanency plan, dated June 25, 2015, was crafted by DCS without Mother's participation. Mother, who refused to discuss the requirements or sign the plan, was given a copy of the plan. Pursuant to the plan, Mother was required to (1) complete a mental health assessment and follow recommendations; (2) complete an alcohol and drug assessment, follow recommendations, and submit to drug screens; (3) obtain and maintain suitable housing free from environmental hazards, domestic violence, drug abuse, or other risks; (4) maintain regular visitation; (5) participate in parent education through therapeutic visitation; (6) obtain and maintain a legal source of income; (7) remit child support; and (8) maintain contact with DCS. Mother later signed a Criteria and Procedure for Termination of Parental Rights on July 10, 2015, indicating that she had received a copy of the form and had been given an explanation of its contents.

On March 15, 2016, DCS sought termination of Mother's parental rights to the Children based upon the following grounds: (1) abandonment for failure to provide a suitable home; (2) the persistence of conditions which led to removal; and (3) substantial

noncompliance with the requirements of the permanency plans. DCS also pursued termination of Mother's parental rights to YariAsia on the additional statutory ground of severe child abuse. DCS claimed that termination of Mother's rights was in the best interest of the Children.[2] The hearing on the termination petition was held on May 3, 2016. Mother failed to appear or defend her rights through counsel, despite receiving notice of the hearing.

Sarah Brock testified that DCS became involved when Mother tested positive for drugs and admitted drug use while pregnant with YariAsia in October 2014. She provided that Mother was referred to CenterPointe for drug treatment and completed the program in November 2014. She stated that Mother agreed to complete several requirements set forth in a non-custodial permanency plan but that the Children were later removed based upon her non-compliance and failure of several drug screens.

Ms. Brock provided that she was not appointed as the case manager for the Children until they were removed in June 2015. She recalled that Mother completed mental health and alcohol and drug assessments on September 8, 2015, but failed to follow the recommendations from the assessments. She provided that Mother failed to attend an intensive outpatient treatment program and later tested positive for marijuana and oxycodone on September 28, 2015, and morphine on October 12, 2015. She completed several referrals for treatment for Mother and reminded her to call the different facilities, but Mother failed to attend as agreed. She even arranged transportation after Mother indicated that transportation was a barrier to her cooperation.

Ms. Brock claimed that Mother appeared intoxicated during visitation and at meetings. She noted that Mother visited regularly through December 2015 but had not attended a visitation since February 3, 2016. She believed that Mother currently lived with her grandfather in an unstable living situation. She recalled meeting Mother's grandfather during an unannounced visit on December 9, 2015. She described him as "agitated" and "angry" and stated that he slurred his words, was unsteady on his feet, and opened a beer while speaking with her and her team leader. She provided that he also threatened to get a gun and kill Father because he wanted him out of the house. She claimed that Mother had not updated her address or given any indication that she moved from grandfather's house since that time. She asserted that Mother also never identified any source of income and failed to maintain contact with her.

Ms. Brock testified that the Children were doing well and had been placed together in an adoptive home. Foster Father confirmed his desire to adopt the Children should they become available. He claimed that the Children had adjusted well.

---

[2]DCS also sought termination of Father's parental rights. His rights are not at issue in this appeal.

Following the hearing, the trial court found clear and convincing evidence to support termination of Mother's parental rights to the Children based upon her abandonment for failure to provide a suitable home, the persistence of conditions which led to removal, and her substantial noncompliance with the requirements of the permanency plan. The court also found clear and convincing evidence to support termination of Mother's parental rights to YariAsia based upon a finding of severe child abuse. The court further found clear and convincing evidence that termination of Mother's parental rights was in the best interest of the Children. This appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.    Whether reversal of the trial court's judgment is required for lack of personal jurisdiction.

B.    Whether reversal of the trial court's judgment is required because the court failed to appoint counsel on Mother's behalf.

C.    Whether the trial court erred by failing to comply with the procedural rules for entry of a default judgment.

D.    Whether clear and convincing evidence supports the court's finding of statutory grounds in support of its termination decision.

E.    Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Children pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of

- 4 -

natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1)    [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

> (2)    [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.    DISCUSSION

### A.

Mother argues that the service of process afforded in this case is deficient because the printed name of the process server is illegible. She further notes that she did not receive a copy of the notice until April 27, 2016, six days prior to the hearing. DCS responds that service of process was provided on March 26, 2016, as evidenced by the return.

"Service of process in termination of parental rights cases in chancery and circuit courts is accomplished pursuant to the Tennessee Rules of Civil Procedure and state statutes. *Turner v. Turner*, 473 S.W.3d 257, 274 (Tenn. 2015) (citing Tenn. Code Ann. §§ 36-1-113(e), -117(m)(1)). Rule 4.01 of the Tennessee Rules of Civil Procedure provides as follows:

(1)    Upon the filing of the complaint, the clerk of the court shall promptly issue the required summons and cause it, with necessary copies of the complaint and summons, to be delivered for service to any person authorized to serve process. *This person shall serve the summons, and the return endorsed thereon shall be proof of the time and manner of service.* A summons may be issued for service in any county against any defendant, and separate or additional summonses may be issued against any defendant

upon request of plaintiff. Nothing in this rule shall affect existing laws with respect to venue.

(2) A summons and complaint may be served by any person who is not a party and is not less than 18 years of age. The process server must be identified by name and address on the return.

(3) If a plaintiff or counsel for plaintiff (including third-party plaintiffs) intentionally causes delay of prompt issuance of a summons, the filing of the complaint (or third-party complaint) will not toll any applicable statutes of limitation or repose.

(Emphasis added.). "The return is a means to prove that service of process has actually been accomplished." *Fair v. Cochran*, 418 S.W.3d 542, 546 (Tenn. 2013) (citations omitted). Here, the return of service provides that the summons and petition were delivered to Mother on March 26, 2016. The process server is also identified by name and address on the return as required by Rule 4.1. Accordingly, we conclude that the trial court acquired personal jurisdiction over Mother through service of process.

B.

Mother next argues that reversal of the judgment is required because she was not afforded counsel. DCS responds that Mother was aware of her right to counsel as evidenced by her signing of the Criteria and Procedure for Termination of Parental Rights, yet she made no attempt to request counsel once receiving notice of the termination proceeding.

Rule 13(a)(2) of the Rules of the Supreme Court of Tennessee provides that in a termination proceeding, the court "shall advise any party without counsel of the right to be represented throughout the case by counsel and that counsel will be appointed if the party is indigent and . . . requests appointment of counsel." Here, Mother failed to appear at the hearing and never requested the appointment of counsel. Accordingly, we conclude that the court did not err in failing to appoint counsel for Mother.

C.

Mother argues that the court's judgment against her must be reversed for failure to follow Rule 55.01 of the Tennessee Rules of Civil Procedure. DCS responds that compliance with Rule 55.01 was not required because the judgment appealed from is not a default judgment. Rule 55.01 provides as follows:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered as follows:

The party entitled to a judgment by default shall apply to the court. Except for cases where service was properly made by publication, all parties against whom a default judgment is sought shall be served with a written notice of the application at least five days before the hearing on the application, regardless of whether the party has made an appearance in the action. A party served by publication is entitled to such notice only if that party has made an appearance in the action. No judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

Here, the trial court issued its judgment based upon the evidence presented at trial, despite Mother's failure to appear after having received notice of the hearing. Accordingly, we conclude that compliance with Rule 55.01 was not required. *See Barber & McMurry, Inc. v. Top-Flite Dev. Corp.*, 720 S.W.2d 469, 471-72 (Tenn. Ct. App. 1986) (holding that compliance with Rule 55.01 was not required when the judgment was based upon evidence presented at trial).

D.

Mother's counsel offers little argument in support of Mother's request for reversal of the statutory grounds supporting the termination. Instead, counsel cites our Supreme Court's holding in *Carrington*, which provides, in pertinent part, as follows:

[I]n an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.

483 S.W.3d at 525-26 (internal citation and footnote omitted.). We agree that our review of each ground and the best interest decision is required; however, we caution counsel against the use of our Supreme Court's holding in this manner. *See generally* Tenn. Sup. Ct. R. 8, RPC 8(3) (providing that lawyers are obligated to act as a zealous advocate on behalf of his or her client).

1.

A parent may be found to have abandoned his or her child by failing to establish a suitable home. The relevant abandonment statutory provision provides, in pertinent part, as follows:

> The child has been removed from the home of the [parent] as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child [ ], and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the [parent] to establish a suitable home for the child, but that the [parent] have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a [parent] in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the [parent] toward the same goal, when the [parent] is aware that the child is in the custody of the department[.]

Tenn. Code Ann. § 36-1-102(1)(A)(ii). Termination for failure to provide a suitable home requires a finding, supported by clear and convincing evidence, that a parent failed to provide a suitable home for his or her child even after DCS assisted that parent in his or her attempt to establish a suitable home.[3] Tenn. Code Ann. § 36-1-102(1)(A)(ii). DCS is required to use its "superior insight and training to assist parents . . . whether the

---

[3] Our Supreme Court specifically overruled the progeny of cases requiring "DCS to prove by clear and convincing evidence that it made reasonable efforts to reunify as a precondition to termination of parental rights." *In re Kaliyah S.*, 455 S.W.3d 533, 555, n. 34 (Tenn. 2015). However, that holding does not abrogate DCS's responsibility to make reasonable efforts to assist parents in establishing a suitable home pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(ii).

parents ask for assistance or not." *State, Dep't of Childrens Servs. v. Estes*, 284 S.W.3d 790, 801 (Tenn. Ct. App. 2008).

The record is devoid of any evidence that DCS made any efforts related to housing during the relevant time period. Accordingly, we conclude that the record did not contain clear and convincing evidence to establish that Mother abandoned the Children by failing to provide a suitable home. We, therefore, reverse the trial court on its ruling that Mother abandoned the children by failing to provide a suitable home. However, this conclusion does not end our inquiry because only one statutory ground is required to support the termination of Mother's parental rights. Tenn. Code Ann. § 36-1-113(c).

2.

Under Tennessee law, a court may terminate parental rights when:

(3)     The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A)     The conditions that led to the child's removal *or other conditions* that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B)     There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C)     The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36-1-113(g)(3) (emphasis added). Termination of parental rights requires clear and convincing evidence of all three factors. *In re Valentine,* 79 S.W.3d at 550. Additionally, the persistence of conditions ground may only be applied "where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.,* 182 S.W.3d at 874.

The record reflects that the conditions which led to removal have not been remedied, namely Mother's failure to address her substance abuse issues. Despite adequate time in which to address the conditions and the availability of services, Mother has failed to progress. Indeed, the record reflects that Mother failed to attend scheduled

appointments even when transportation was arranged for her and that she continually tested positive for drugs. The testimony presented also established that the Children reside together in a pre-adoptive home. With these considerations in mind, we conclude that the record contains clear and convincing proof in support of the trial court's termination decision based upon the persistence of conditions which led to removal.

3.

"A parent's rights may be terminated for her substantial noncompliance with the responsibilities contained in a permanency plan, [Tennessee Code Annotated section 36-1-113(g)(2)], so long as the plan requirements are 'reasonable and related to remedying the conditions which necessitate[d] foster care placement.'" *Id.* at 537 (quoting *In re Valentine,* 79 S.W.3d at 547). Here, Mother was required to (1) complete a mental health assessment and follow recommendations; (2) complete an alcohol and drug assessment, follow recommendations, and submit to drug screens; (3) obtain and maintain suitable housing free from environmental hazards, domestic violence, drug abuse, or other risks; (4) maintain regular visitation; (5) participate in parent education through therapeutic visitation; (6) obtain and maintain a legal source of income; (7) remit child support; and (8) maintain contact with DCS. The record reflects that Mother completed the necessary assessments and maintained regular visitation. However, Mother failed to complete the remainder of the requirements and also refused to follow the recommendations from the assessments as required by the permanency plan. With these considerations in mind, we hold that the record contains clear and convincing proof in support of the trial court's findings regarding Mother's substantial noncompliance with the requirements contained in the permanency plan.

4.

The trial court may terminate parental rights based upon a finding of severe child abuse either as found "under any prior order of a court" or as "found by the court hearing the petition to terminate parental rights." Tenn. Code Ann. § 36-1-113(g)(4). "Severe child abuse" is defined as:

(A)      (i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;

(ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).

(B)     Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;

(C)     The commission of any act towards the child prohibited by §§ 39-13-502 [through] 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child; or

(D)     Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring;

Tenn. Code Ann. § 37-1-102(b)(21).  Further, prenatal drug use constitutes severe child abuse under Tennessee Code Annotated section 37-1-102(b)(21). *In re Benjamin M.*, 310 S.W.3d 844, 847-51 (Tenn. Ct. App. 2009).

Here, the trial court found that Mother abused drugs while pregnant with YariAsia. The record reflects that Mother tested positive for drugs while pregnant with YariAsia and even self-reported her drug use.  Accordingly, we conclude that the record supports termination of Mother's parental rights to YariAsia on this statutory ground.

E.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground to terminate Mother's parental rights, we must consider whether termination was in the best interest of the Children.  In making this determination, we are guided by the following non-exhaustive list of factors:

(i)     In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[4]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also

---

[4] *In re Kaliyah S.*, 455 S.W.3d at 555 ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

A number of the best interest factors weigh against Mother. She had not made the adjustment of circumstances necessary to make it safe and in the Children's best interest to return home. Indeed, the record reflects that Mother has yet to address her substance abuse issues. Tenn. Code Ann. § 36-1-113(i)(1). Having reviewed the evidence, we conclude that DCS expended reasonable efforts in attempting to assist her with her substance abuse issues but that she was simply unable to make a lasting adjustment. Tenn. Code Ann. § 36-1-113(i)(2). The Children reside in a safe and stable foster home that is willing and able to adopt them. Removing them would negatively affect their emotional condition. Tenn. Code Ann. § 36-1-113(i)(5). Questions remain as to whether the physical environment of Mother's home is healthy and safe as evidenced by her continued drug use and living situation. Tenn. Code Ann. § 36-1-113(i)(7).

While we do not wish to discount Mother's love for her children, the Children have simply languished in custody for far too long while she has refused to address her substance abuse issues. The Children should be allowed to achieve permanency and stability in their current placement. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Mother's parental rights was in the best interest of the Children. We affirm the decision of the trial court.

## V.    CONCLUSION

This judgment of the trial court is reversed as to the finding of abandonment by failure to provide a suitable home, and the trial court is affirmed on all other grounds. This case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Kayla N. S.

_____
JOHN W. McCLARTY, JUDGE